**STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Appellant,**

v.

**Mamie REYNOLDS et al., Exceptions of Charles E. Watson, et al., Respondents.**

No. KCD 27558.

Missouri Court of Appeals, Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or Transfer Denied Nov. 19, 1975.

Bruce A. Ring, Chief Counsel, Earl H. Schrader, Jr., Terry P. Thompson, George L. Sharp, Asst. Counsel, Missouri State Highway Com'n, Kansas City, for appellant.

Robinson & Miller, Maysville, for respondents.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

The State of Missouri ex rel. State Highway Commission of Missouri, plaintiff below and appellant here (hereinafter referred to as the Commission), in exercise of the power of eminent domain, brought a condemnation action in the Circuit Court of Daviess County, Missouri, to acquire a 62.59 acre tract of land for construction of Interstate 35. The owners of the property were Charles E. Watson and Eva F. Watson, husband and wife (hereinafter referred to as the owners). The whole of the tract of land owned by them was being taken. At the time in question the owners had 25 acres of the tract in "conservation reserve" and the overall tract was described as being used for "farming and for recreational purposes." Hallett Construction Company (hereinafter referred to as the lessee) had a lease from the owners to mine and remove rock and sand from the property. As of the legal date of taking the lessee had not exercised its rights under the lease. However, the term of the lease did not expire until approximately two years after the legal date of taking.

The owners and lessee filed exceptions to the Commissioners' Report fixing and assessing $13,850.00 as damages for the taking of the 62.59 acre tract of land. The amount awarded by the Commissioners was paid into court on January 5, 1973.

On change of venue a Caldwell County jury rendered a verdict for $13,851.00 as damages for the taking of said tract of land. Thereafter, lessee filed a separate motion for a new trial which was sustained by the trial court on the sole ground that it erred in prohibiting Ronald E. Harken, in response to a question posed to him by lessee's counsel, from giving his opinion as to the best use of the tract of land in the reasonably foreseeable future as of the date of taking. The transcript discloses, from an offer of proof made, that if permitted to testify Harken's opinion would be that the best use of the tract of land in the reason-

ably foreseeable future as of the date of taking would be for the purpose of mining and removing limestone rock and sand. The owners also filed a separate motion for a new trial which was sustained by the trial court on two grounds: (1) that it erred in prohibiting Ronald E. Harken from giving his opinion as to the best use of the tract of land in the reasonably foreseeable future as of the date of taking and (2) it erred in prohibiting Ronald E. Harken from giving his opinion as to the fair market value of the tract of land as of the date of taking.

The Commission appealed from the order of the trial court granting the owners and lessee a new trial. In the crucible of appeal the only reason advanced by the Commission in attacking the order granting a new trial is that Harken was not "qualified as competent" to give an opinion as to either the best use of the tract of land in the reasonably foreseeable future or as to its fair market value as of the date of taking.

Whether the trial court erred in granting a new trial because of its refusal at trial to permit Harken to give his opinion as to the best use of the tract of land in the reasonably foreseeable future as of the date of taking is an issue common to both the owners and the lessee. If this court concludes that the trial court did not err in granting a new trial to the owners and lessee on the issue common to both of them, then it becomes unnecessary to address the propriety of the trial court's action in granting a new trial to the owners on the basis of its failure to have permitted Harken to testify as to the fair market value of the land as of the date of its taking. This for the reason that " . . . if either of the reasons assigned for the granting of a new trial is proper, the action of the trial court [in granting a new trial] should be affirmed." *Davis v. Perkins*, 512 S.W.2d 868, 870 (Mo.App.1974), and cases therein cited. Consequently, appellate disposition of this case rests on the narrow basis that the trial court, for reasons subsequently set forth, did not err in granting a new trial to the owners and lessee premised on the issue common to both of them.

■ *Missouri Edison Company v. Gamm*, 379 S.W.2d 166, 172 (Mo.App.1964), holds that it is proper for a jury to consider the value of limestone rock present on land subject to condemnation in determining the fair market value of such land for the purpose of assessing damages. The presence of sand would seem to lend itself to the same consideration. Concomitantly, the best use of land in the reasonably expected near future is a proper jury consideration in determining the fair market value of land subject to condemnation. *State ex rel. Board of Regents for Central Missouri State College v. Moriarty*, 361 S.W.2d 133, 136 (Mo.App.1962); and MAI No. 16.02. It is noted, parenthetically, that MAI No. 16.-02 was one of several instructions given by the trial court to the jury in the instant case.

■ In view of the above, the only remaining question is whether Harken was "qualified as competent" to render an opinion that the best use of the tract of land in question in the reasonably foreseeable future as of the date of taking was for mining and removing limestone rock and sand. The answer to the question pivots on the scope and measure of the discretionary power possessed by the trial court to preliminarily decide whether Harken was qualified to render the opinion sought to be elicited from him. It is the general rule that the trial court is vested with broad discretion in preliminarily deciding the qualifications of an expert (or one standing in the role thereof), and its exercise of discretion relative thereto will not be disturbed on appeal absent a showing that it was abused. *Christian v. Jeter*, 287 S.W.2d 768, 771 (Mo.1956); *Minor v. Lillard*, 306 S.W.2d 541, 546 (Mo.1957); and *Union Electric Company of Missouri v. Simpson*, 371 S.W.2d 673, 677 (Mo.App.1963). As noted in *State ex rel. State Highway Commission v. Barron*, 400 S.W.2d 33, 36–37 (Mo.1966), there is "no exact rule" to measure the qualifications of a witness regarding their expertise to testify as to the value of land

subject to condemnation and the "tendency is to admit any evidence which sheds light on the question, leaving it to the discretion of the trial court to keep it within bounds", and if the proffered witness's "knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify." The aforementioned appear equally valid and applicable for measuring the qualifications of a witness asked to render an opinion as to the best use of land subject to condemnation in the reasonably foreseeable future as of the date of taking. No viable distinction between the two springs to mind.

■ The trial court in sustaining the separate motions of the owners and lessee for a new trial on the common ground under consideration obviously concluded that it had abused its discretion during trial in not permitting Harken to give an opinion as to the best use of the tract of land in question in the reasonably foreseeable future. The case was still within the exclusive jurisdiction of the trial court when it did so, and since it was vested during trial with the obligation and right to preliminarily determine Harken's qualifications to render such an opinion, it was no less vested with a comparable obligation and right to do so when ruling on the motions for a new trial filed by the parties. Otherwise expressed, if the trial court could not be said to have been guilty of an abuse of discretion if it had permitted Harken during trial to have given an opinion as to the best use of the tract of land in the reasonably foreseeable future, it can not be said to have erred, i. e., abused its discretion, in sustaining the respective motions of the owners and lessee for a new trial on the ground that it wrongfully prohibited Harken from giving such an opinion.

Attention now focuses on evidence relative to Harken's qualifications as disclosed by the record, bearing in mind the guidelines previously referred to gleaned from *Christian v. Jeter*, supra, *Minor v. Lillard*, supra, *Union Electric Company of Missouri v. Simpson*, supra, and *State ex rel. State Highway Commission of Missouri v. Barron*, supra.

■ The following evidence is found in the record, all preceding the controversial question posed by lessee's counsel, bearing on Harken's qualifications: He was a graduate geologist with approximately fifteen years practical experience in the field as an employee of lessee. His duties consisted primarily of "exploration work" for rock, sand and gravel, and prospecting, drilling and testing for such materials. Additionally, he evaluated prospective rock, sand and gravel sites for his employer. He had performed the aforementioned duties for his employer on approximately fifty or sixty prospective sites. He evaluated prospective rock, sand and gravel sites for his employer for the purpose of outright purchase as well as for leasing.

Harken was familiar with the tract of land in question prior to the time it was leased by his employer and his familiarity with it had continued since that time. He was present when core drillings were made on the tract of land in question to determine the amount and availability of rock and sand thereon. The maximum "overburden" that would have to be removed to reach the rock and sand was twenty-eight feet.

The core drilling that was done disclosed the presence of Bethany Falls limestone that was acceptable for "base material, possibly masonery stone and probably asphalt stone." The core drilling also disclosed the presence of "fine sand" that was suitable as a "fill material" and as an "asphalt material". He was knowledgeable as to the "reserves of rock and sand available" on the tract of land which was taken.

Harken was also knowledgeable as to the "marketability" and "market price" of rock and sand and further testified that the demand for such materials from the tract of land in question was increasing.

When the above evidence touching upon Harken's qualifications is viewed in con-

junction with the previously iterated guidelines, this court is unable to brand the trial court with an abuse of discretion in making its post-trial determination that Harken was qualified to give an opinion that the best use of the tract of land in the reasonably foreseeable future as of the date of taking was for the purpose of mining and removing rock and sand. By doing so the trial court, as a practical matter, rectified what it obviously concluded had been an abuse of discretion on its part during the course of trial. It is difficult to envision anyone more qualified than a geologist to render an opinion as to the practical and advantageous adaptability of a tract of land for mineral purposes in the reasonably foreseeable future as of the date of taking. It is equally difficult to imagine that the ordinary juror would be possessed with the requisite expertise, whether obtained by way of formal education or practical experience, to independently conclude that a tract of land in the reasonably foreseeable future best lent itself to the mining and removal of rock and sand. The weight to be given the testimony sought to be elicited from Harken was a jury matter. The concern of the trial court, as well as the concern of this court, is as to the admissibility of such testimony, not as to its weight.

■ Before review of this case is concluded, a belated argument advanced by the Commission in its reply brief requires passing mention. Therein the Commission argues that since Harken, without objection, testified that the best use of the tract of land in question, both as of the date lessee originally leased it and as of the date of taking in the condemnation action, was for "mining purposes", error, if any, on the part of the trial court in prohibiting Harken from answering the question which generated the common issue decisive of this appeal was harmless. In doing so the Commission, either intentionally or by oversight, fails to recognize any distinction between the best use of land as of the date of taking and the best use of land in the reasonably foreseeable future as of the date of taking. In the context of this particular case the distinction takes on added significance. Lessee initially acquired its lease in 1964 and as of the legal date of taking the lease still has two years to run. From inception of the lease up to and including the date of taking lessee had never exercised its rights thereunder to expose and remove rock and sand from the tract of land in question. For this reason, it is not difficult to surmise that the ordinary juror might conclude that since the tract of land during the period mentioned had never been used for mining purposes it had no enhanced use in the reasonably foreseeable future for mining purposes. The distinction previously mentioned, standing alone, blocks what the trial court in its discretion concluded to be reversible error from being converted into harmless error.

The action of the trial court in granting the owners and lessee a new trial on the ground that it erred in prohibiting witness Ronald E. Harken from giving his opinion as to the best use of the tract of land in the reasonably foreseeable future as of the date of taking is hereby affirmed and the case is accordingly remanded for a new trial.

All concur.