Dwight EDWARDS, Jr., a Minor, by Mrs. Dwight Edwards, His Next Friend, Plaintiff-Respondent,

v.

Richard RUDOWICZ, Defendant-Appellant.

No. 31220.

St. Louis Court of Appeals.

Missouri.

May 21, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied June 25, 1963.

Derrick & Holderle, Tyree C. Derrick, St. Louis, for appellant.

Barnhart & Sommers, Don B. Sommers, St. Louis, for respondent.

SAMUEL E. SEMPLE, Special Commissioner.

This is a suit for damages wherein plaintiff Dwight Edwards, Jr., a minor, by next friend, sought to recover for personal injuries received by plaintiff when struck by an automobile driven by defendant Richard Rudowicz. The trial resulted in a verdict for plaintiff in the sum of $7,000. Defendant has duly appealed from the ensuing judgment.

On September 26, 1960, plaintiff, age three and one-half years, was visiting his aunt who lived at 1016 North Rock Hill Road, in the City of Rock Hill, St. Louis County. About 5 P.M. during a period when the traffic was heavy, plaintiff was observed standing near his mother's car which was parked on the west side of Rock Hill Road across the street from the home of plaintiff's aunt. The plaintiff started to run from the west to the east side of the road as defendant approached from the south traveling north. Defendant, seeing plaintiff, applied his brakes and slid his wheels but the right front of defendant's car struck plaintiff knocking him forward and against the sidewalk on the east side of the street. The case was tried and submitted on the theory of excessive speed, to-wit: that defendant was operating his automobile at a speed in excess of a speed limit of 20 miles per hour.

The first point raised by defendant is that the portion of Instruction No. 1 defining the term "highest degree of care" given by the Court was erroneous. The portion of Instruction No. 1 of which defendant complains reads as follows:

" 'Highest degree of care' as used in these instructions means the highest practicable degree of care which a very careful and prudent person would ordinarily use under the same or similar circumstances as shown in the evidence in this case."

Defendant contends that the proper definition of the term highest degree of care as often declared by the courts of this state is that degree of care that a very careful and prudent person would ordinarily exercise under the same or similar circumstance. Defendant states that the instruction given here goes beyond the ordinary definition as set out by the courts and places a greater burden on the defendant. Defendant argues that the only proper definition of the phrase "highest degree of care" limits the duty of the operator of a motor vehicle to that degree of care that a very careful and prudent person would ordinarily exercise under the same or similar circumstance, and contends that Instruction No. 1 here goes beyond the limits of the definition by superimposing on that duty the extra duty of exercising the highest practicable degree of care that a very careful and prudent person would ordinarily exercise, etc. Defendant relies on the cases of Martin v. Turner, Mo.Sup.,

306 S.W.2d 473, 478; Shepard v. Harris, Mo.Sup., 329 S.W.2d 1, 9, 10; and May v. Bradford, Mo.Sup., 348 S.W.2d 133, 135.

The case of Martin v. Turner, supra, held as prejudically erroneous the following instruction:

"'The Court instructs the jury that any person operating an automobile * * * upon * * * a public * * highway * * * is required to use the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury or death to persons on * * * such * * * highways * * * and * * * the absence of such care constitutes negligence', etc."

The opinion stated that "* * * The definition set forth in the instruction falls far short of the requirements of the statute and the instruction was therefore prejudicially erroneous. * * *" The later case of Shepard v. Harris, supra, in considering the holding in the Martin case that the instruction therein did not properly define the phrase "highest degree of care," made the following explanation of the ruling in that case. "* * * The reason was that the instruction did not in fact define the 'highest degree of care' but confusingly stated that one 'is required to use the highest degree of care that a very careful person would use,' etc." The case of May v. Bradford, supra, involved an instruction identical in substance with the instruction in the Martin case and the court followed the ruling in the Martin case in holding the instruction prejudically erroneous. These cases do not appear to be in point as the instructions ruled on there were not in fact definitions of the phrase "highest degree of care."

 In the instant case since defendant offered no definitive instruction of his own he is not in a favorable position to criticize Instruction No. 1 unless it constituted a positive misdirection. Vogelgesang v. Waelder, Mo.App., 238 S.W.2d

849, 857. An identical instruction to Instruction No. 1 was held not harmful to the defendant in the case of Allen v. Purvis, Mo.App., 30 S.W.2d 196, 202. In that case it was contended that the effect of the instruction was to superimpose one kind of highest practical care upon the kind of care used by a highly prudent person. The contention was denied by the court and it was held that the instruction was not erroneous. It is concluded that the giving of Instruction No. 1 does not constitute prejudicial error, however, a better and more recently approved definition of the phrase "highest degree of care" is stated in Woods v. Chinn, Mo.App., 224 S.W.2d 583, 587.

 The next point raised by the defendant is that the trial court erred in permitting police officer Bell to testify (1) as to the average braking distance of an automobile traveling and (2) the speed defendant's automobile was traveling as indicated by the length of the skid marks made by the vehicle. Defendant contends that officer Bell, who was not an eyewitness to the accident, was not properly qualified as an expert and was therefore not a competent witness to give testimony as to the stopping distance of an automobile traveling 30 miles per hour or to give his opinion as to the speed of defendant's automobile based upon the length of skid marks made by defendant's vehicle. Defendant argues that as plaintiff's case was based upon speed in excess of the 20 mile an hour speed limit at the place of the casualty that admitting testimony of officer Bell as to stopping distances and speed was highly prejudicial and constituted reversible error.

In connection with the point raised here it should be noted that officer Bell was put on the stand as a witness for defendant and testified on direct examination that he had been a police officer for the City of Rock Hill for eight and one-half years. That he arrived at the scene of the accident within a short time after the occurrence. That he measured the skid marks made by

all four wheels of defendant's automobile and that each of the four wheels made a skid mark forty-nine and one-half feet long. On cross-examination Bell testified that it was necessary for him as a police officer with eight years experience to familiarize himself with braking distances of automobiles and that he knew the braking distance of an automobile going 30 miles per hour.

The following testimony on cross-examination was admitted for the consideration of the jury and forms the basis for defendant's contention:

"Q (Mr. Sommers) Officer, at the place where this accident occurred the street has leveled off at that point, has it not?

"A There's still a slight incline at that point.

"Q Was this dry asphalt?

"A It was dry as far as we know.

"Q Was it asphalt?

"A Yes, sir.

"Q Do you know what the stopping distance, the average stopping distance of an automobile going 30 miles per hour would be under those conditions, Officer?

"MR. DERRICK: I object, if the Court please. That's not enough information for a hypothetical question on which to base the answer.

"THE COURT: Overruled.

"Q (Mr. Sommers) You may answer.

"A Forty-six feet is the average stopping distance at 30 miles per hour.

＊　　＊　　＊　　＊　　＊　　＊

"Q (Mr. Sommers) You did measure 49½ feet of skid marks for the front wheels, did you not?

"A Yes, sir.

"Q And that indicates that it took this automobile, after the brakes were applied, 49½ feet to come to a stop; is that correct?

"A In my opinion, yes.

"Q That is three and a half feet more than the average distance for an automobile going 30 miles an hour?

"MR. DERRICK: I object to that, if the Court please. That is speculative.

"THE COURT: Overruled.

"Q (Mr. Sommers) Right, Officer?

"A Right.

"Q This automobile then was going in excess of the speed limit in this area, was it not, Officer?

"A In my estimation, yes.

"MR. DERRICK: I object to that and move it be stricken and the jury instructed to disregard it, if the Court please. It is the witness' estimation.

"THE COURT: Overruled."

The courts have held that " * * * An expert witness is one who by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of deducing correct conclusions. However, the expert's opinion, which the jury may accept, must not be a mere guess—it must be based upon facts and adequate data. * * * " Giambelluca v. Missouri Pacific R. R. Co., Mo., 320 S.W.2d 457, 463. The determination of the question of the qualification of a witness as an expert in the field in which his testimony is sought rests in the first instance in the sound discretion of the trial court and its decision in that respect should not be set aside in the absence of a showing of abuse of discretion. Yocum v. Kansas City Public Service Company, Mo., 349 S.W.2d 860, 864. " * * * 'It is also well estab-

lished that the admission or exclusion of expert opinion testimony is a matter largely within the discretion of the trial court and the exercise of that discretion will not be interfered with unless it plainly appears that such has been abused.' * * *" Dillenschneider v. Campbell, Mo.App., 350 S.W.2d 260, 266.

In this case the evidence showed that defendant's witness Bell had been a member of the police force for eight and one-half years. That in his business as a police officer it had become necessary for him to familiarize himself with the stopping distance of automobiles and that he knew the average stopping distance of an automobile traveling 30 miles per hour. The witness was not examined or tested by the defendant as to the source or extent of his special knowledge or experience. Defendant argues that the witness had no special knowledge of stopping distances as he said he didn't know the stopping distance of a car traveling 25 miles per hour, however, his lack of knowledge as to braking distance of an automobile going 25 miles per hour may have affected the weight of his testimony but not his competency in view of the other facts developed by the testimony. Bebout v. Kurn, 348 Mo. 501, 154 S.W.2d 120, 126. It might also be noted that this testimony regarding speed of the automobile was consistent with and substantially the same as the testimony of plaintiff's witness Loretta Habermehl who was an eyewitness to the casualty. The witness' qualifications were rather briefly stated, however, giving the trial court the right to exercise its sound discretion in respect to determining the competency of this witness, it is concluded that the qualifications of officer Bell as an expert were not so insufficiently stated as to result in an abuse of discretion by the trial court in admitting the testimony in question.

Defendant complains that there was no factual basis to support the conclusions and opinion of officer Bell and no attempt was made to hypothesize the condition of the terrain, the grade of the street or the condition of the tires on defendant's automobile. This contention is without merit. Officer Bell was present at the scene shortly after the accident and personally observed the street and surroundings as well as defendant's motor vehicle and the witness was specifically asked to consider the conditions existing there at the place of the accident. The witness' answers fairly appeared to be based on his knowledge of the conditions existing at the scene. The trial court did not abuse its discretion in allowing this testimony to be presented to the jury.

It is recommended that the judgment for plaintiff entered by the trial court be affirmed.

PER CURIAM.

The foregoing opinion by Semple, Special Commissioner, is adopted as the opinion of the court.

Accordingly, judgment of the trial court is affirmed.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.